O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| RUFINA MOLINA; ESTATE OF LUIS MARTINEZ,<br><br>                Plaintiffs,<br><br>   v.<br><br>CITY OF LOS ANGELES; RICARDO HUERTA; RUDOLPH RIVERA; ALDO QUINTERO; and DOES 1 through 10, inclusive,<br><br>                Defendants. | Case № 2:16-cv-01293-ODW (ASx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [37]** |

## I.   INTRODUCTION

Plaintiffs Rufina Molina and the Estate of Luis Martinez, by and through its successor in interest Rufina Molina (collectively, "Molina") bring this action pursuant to 42 U.S.C. § 1983, alleging a violation of constitutional rights, interference with familial integrity, and municipal liability. (*See* Compl., Not. of Removal Ex. 1, ECF No. 1-1.) On January 13, 2017, Defendants City of Los Angeles, Ricardo Huerta, Rudolph Rivera, and Aldo Quintero (collectively, "Defendants") moved for summary judgment on Molina's entire complaint. (ECF No. 37.) For the reasons discussed below, the Court **GRANTS** Defendants' motion as to each of Molina's causes of action.

## II.  FACTUAL BACKGROUND

This is a police-involved shooting case wherein Los Angeles Police Department ("LAPD") officers shot and killed a man named Luis Martinez.  The shooting occurred on April 21, 2015, after Martinez's wife, Monica Ramirez, telephoned 911 to report that Martinez had stabbed himself with a knife but was no longer armed.  (Statement of Uncontroverted Facts ("SUF") ¶ 2, ECF No. 37-1.)  At the time, Martinez was using a wheelchair following an injury.  (*Id.* ¶ 4.)  The LAPD broadcasted a radio call for an attempted suicide, and Officers Aaron Skiver, Jack Tuck, Ricardo Huerta, Aldo Quintero, and Rudolph Rivera responded to the call.  (*Id.* ¶¶ 5–17.)

The officers testified that when they entered Martinez's apartment, they observed him sitting in his wheelchair in the center of the living room, approximately 17 feet from the entrance of the apartment.  (*Id.* ¶ 19.)  The officers also testified that they attempted to communicate with him and assess the situation, but Martinez was unresponsive (though conscious).  (*Id.* ¶¶ 21–22.)  Next, Quintero testified that Martinez rolled his wheelchair backward and then reached underneath his right leg, pulling out a fixed-blade knife that he had been hiding.  (*Id.* ¶¶ 22–23.)  Quintero says that Martinez held the knife extended in front of him with the blade pointing outward.  (*Id.* ¶ 25.)  Some of the officers quickly escorted Ramirez from the apartment out of concern for her safety, and she went to a neighboring apartment.  (*Id.* ¶ 28.)  Meanwhile, other officers gave commands in English and in Spanish for Martinez to drop the knife, but he did not respond or drop it.  (*Id.* ¶¶ 29–30.)  Rivera, Quintero, and Huerta testified that Martinez then slowly pushed himself out of his wheelchair to a standing position and began walking toward them with the knife still in his hand.  (*Id.* ¶ 31.)  He then sat back down after taking a few steps.  (*Id.*)  A few moments later, Martinez stood up again with the knife and began pacing the living room.  (*Id.* ¶ 33.)  The officers backed out of the apartment to create more of a distance between themselves and Martinez.  (*Id.* ¶ 38.)  Martinez then stopped pacing and placed the tip

of the knife against his chest and pushed it into his body. (*Id.* ¶ 39.) The officers testified that he was unresponsive to their commands to stop, other than shaking his head as if indicating "no." (*Id.* ¶ 40.) Then, Martinez pulled the knife out of his chest and began walking toward the officers, pointing the knife in their direction. (*Id.* ¶ 41.) By this time, the officers had their guns drawn in the "low ready" position. (*Id.* ¶ 26.) Officer Rivera testified that Martinez began moving toward him at a fast pace with the knife and Rivera warned him that he would have to shoot. (*Id.* ¶ 49.) Rivera says that when Martinez was within three to five feet of him, he believed that Martinez was trying to stab or kill him and as a result, he shot Martinez. (*Id.* ¶ 50.) Martinez fell to the floor after being shot, but after falling, he immediately used his left arm to prop up his upper torso. (*Id.* ¶ 51.) Then, he lunged forward with the knife in his right hand, and he attempted to stab Rivera in the legs by swinging the knife in a side-to-side motion. (*Id.*) In response, Rivera shot a second round at Martinez's upper torso area. (*Id.* ¶ 52.) At the same time, seeing Martinez's alleged attempt to stab Rivera, Officers Huerta and Quintero fired a shots at Martinez. (*Id.* ¶¶ 53–54.) Firefighters and other emergency medical personnel arrived soon afterwards, and Martinez was pronounced dead at the scene. (*Id.* ¶¶ 57–58.)

At the time of the shooting, LAPD policy authorized an officer to use deadly force to protect him or herself or others from what the officer reasonably believed to be an imminent threat of death or serious bodily injury. (*Id.* ¶ 61.) In addition, LAPD policy did not require that officers carry a Taser (stun gun) on their person at all times. (*Id.* ¶ 60.)

Plaintiff Molina is Martinez's mother. (First Amended Compl. ("FAC") 3, ECF No. 15.) Molina believes that Martinez died without a will, and no will has appeared since his death. (*See* SUF ¶ 64.) Martinez is survived by a wife and children. (*Id.* ¶ 63.) His wife filed a similar action in state court, styled as *Monica Ramirez et al. v. City of Los Angeles et al.*, Case No. BC597276. (*See Ramirez* Compl., ECF No. 24-3.)

### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *See id.* On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.*

If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In evaluating the evidence presented in support of or in opposition to summary judgment, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). However, conclusory or speculative testimony is insufficient to meet this burden, or to raise genuine issues of fact defeating summary judgment. *See Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).

### IV. DISCUSSION

Molina asserts causes of action for Excessive Force/Unreasonable Seizure; Interference with Familial Integrity; and Municipal Liability for Unconstitutional Customs and Practices. All three claims are made pursuant to 42 U.S.C. § 1983. The Court will discuss each in turn.

///

### A.    Excessive Force/Unreasonable Seizure

Molina asserts this claim on behalf of Martinez against the police officer defendants. She claims that the officers violated Martinez's rights under the Fourth Amendment to the United States Constitution. (FAC ¶ 14.)

This type of claim is personal to the decedent, but the executor of a decedent's estate may assert it on his behalf. *See Hayes v. Cnty. Of San Diego*, 736 F.3d 1223, 1228 (9th Cir. 2013). A party seeking to bring a survival action "bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." *Id.*

Here, California does authorize survival actions. Cal. Code Civ. P. § 377.30. However, only the decedent's successor in interest may bring the claim, unless the decedent appointed a personal representative during his lifetime. *Id.* There is no will in this case, so only Martinez's successor in interest can bring a claim on his behalf. (*See* SUF ¶ 64.) Where there is no will, California Probate Code sections 6401 and 6402 define a person's successor in interest as the beneficiary of their estate. A decedent's parents only become heirs for purposes of vicarious claims such as this one where there is no surviving spouse or children. Cal. Prob. Code § 6402. Martinez had a wife and children when he died, and as such, they are his beneficiaries and successors of his estate, not Molina. (*See* SUF ¶ 63.) Therefore, Molina cannot bring a claim for Excessive Force or Unreasonable Seizure on Martinez's behalf. The Court **GRANTS** summary judgment as to this cause of action.

### B.    Interference with Familial Integrity

Next, Molina asserts that the defendant police officers wrongfully interfered with the integrity of her family. The Ninth Circuit has held that state interference with parents' liberty interests in the companionship of their children without due process of law is actionable under 42 U.S.C. § 1983. *Kelson v. City of Springfield*, 767 F.2d 651, 654 (9th Cir. 1985).

Defendants argue that there is no substantive due process violation here because the official conduct, as a matter of law, does not "shock the conscience." (Mot. 20.) Alternatively, they argue that the police officer defendants are entitled to qualified immunity against this charge. (Mot. 23–25.)

### 1. Substantive Due Process

The claim of wrongful interference with familial integrity requires an underlying substantive due process violation. *Kelson*, 767 F.2d at 654. Moreover, the official conduct giving rise to the violation must "shock the conscience." *See Gantt v. City of L.A.*, 717 F.3d 702, 707 (9th Cir. 2013). Whether certain conduct "shocks the conscience" depends on the circumstances. *Tennison v. City and Cnty. of San Francisco*, 570 F.2d 1078, 1089 (9th Cir. 2009).

> Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience. On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives.

*Id.*

Other district courts in the Ninth Circuit have found that whether or not the official conduct falls into the "purpose to harm" standard is a fact-intensive inquiry, and this Court agrees. *See, e.g.*, *Chien Van Bui v. City and Cnty. of San Francisco*, 61 F. Supp. 3d 877, 901–02 (N.D. Cal. 2014); *Duenez v. City of Manteca*, No. CIV S-11-1820 LKK/KJN, 2013 WL 68116375, at *15 (E.D. Cal. Dec. 23, 2013) ("Even if . . . decedent had a knife in his hand, that alone would not necessarily bring the situation into a 'purpose to harm' situation, since a reasonable jury could find that decedent was not advancing on [the officer], nor threatening him with the knife."). Viewing the facts in the light most favorable to Molina, it is possible that a jury would disbelieve that Martinez was advancing on the officers and instead find that because he was confined to a wheelchair, the officers' accounts cannot be accurate. As such, there is

room for a genuine dispute about whether the officers acted on snap judgments. Therefore, the issue of whether the officers' conduct constituted a substantive due process violation cannot be resolved at the summary judgment stage.

### 2. Qualified Immunity

Defendants argue alternatively that the officers are entitled to qualified immunity for their actions. (Mot. 23–25.) "Public officials are immune from suit under 42 U.S.C. § 1983 unless they have violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *City and Cnty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (internal quotation marks omitted). Further, the clearly established right must be more specific than simply the right to be free from unreasonable searches and seizures. *Id.* at 1776 ("Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures.").

In Molina's complaint, the only statutory or constitutional violation she alleges that Martinez suffered is the violation of the Fourth Amendment's limits on unreasonable seizures. (*See* FAC ¶ 23.) Courts have held that even where a plaintiff can show that an officer's conduct was "imprudent, inappropriate, or even reckless," the officer will have qualified immunity unless the court determines that the officer could not have reasonably believed that his conduct was justified. *See, e.g.*, *Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir. 2002). Here, there are no allegations of specific statutory or constitutional violations beyond the right to be free from unreasonable searches and seizures, and the Court cannot determine as a matter of law that the officers involved could not have reasonably believed their conduct was justified. As such, the officers are entitled to qualified immunity, and the Court **GRANTS** summary judgment as to this cause of action.

### C. Municipal Liability for Unconstitutional Customs and Practices

Finally, Molina claims that the City of Los Angeles is liable for damages pursuant to 42 U.S.C. § 1983 for the officers' conduct in this case. (*See* FAC ¶¶ 28–

1  37.)  The Supreme Court has held that a municipality cannot be liable solely because it
2  employs a tortfeasor; instead, liability will attach only where an official policy
3  "causes" an employee to violate constitutional rights.  *Monell v. Dep't of Soc. Servs.*,
4  436 U.S. 658, 691–92 (1978).  In order to prevail on this claim, then, Molina must
5  show that the underlying civil rights violation existed, and that the cause of the
6  violation was a "permanent and well settled" official policy of the defendant public
7  entity.  *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988).  Alternatively,
8  Molina could prevail by showing the existence of a pattern of inadequate training
9  amounting to the deliberate indifference to rights of persons with whom the
10 inadequately trained officers come into contact.  *Davis v. City of Ellenburg*, 869 F.2d
11 1230, 1233 (9th Cir. 1989).

12       Here, the only allegedly inadequate training or policy is the City's failure to
13 require that its officers carry stun guns or Tasers on their person.  (*See* FAC ¶ 30.)
14 But Molina does not offer any evidence showing that this failure is part of a larger
15 custom or practice, and moreover, courts have held that failure to equip deputies with
16 Tasers is not sufficient to avoid summary judgment on a municipal liability claim.
17 *See, e.g.*, *Castro ex rel. Castro v. City of Mendota*, No. 1:10-cv-618 AWI BAM, 2012
18 WL 4468419, at *8–9 (E.D. Cal. Sept. 26, 2012); *Plakas v. Drinski*, 19 F.3d 1143,
19 1148–49 (7th Cir. 1993).  As a result, the Court concludes that as a matter of law,
20 Molina cannot show that the alleged civil rights violation occurred as a result of an
21 official policy or inadequate training.  The Court thus **GRANTS** summary judgment
22 as to Molina's third cause of action.

23 / /
24 / /
25 / /
26 / /
27 / /
28

## V. CONCLUSION

For the reasons discussed above, the Court hereby **GRANTS** Defendants' motion as to each of Molina's causes of action.

**IT IS SO ORDERED.**

March 7, 2017

  _____
  **OTIS D. WRIGHT, II**
  **UNITED STATES DISTRICT JUDGE**